IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHAD GERRIT SCHRYVERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:18-cv-38-WC |
| ) | [wo] |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

On October 25, 2016, Chad Gerrit Schryvers ("Plaintiff" or "Schryvers") applied for disability insurance benefits under Title II of the Social Security Act ("the Act") alleging a disability date of June 1, 2010. (R. 188–94). The application was denied initially and upon reconsideration. (R. 110–18). Plaintiff timely appealed and requested a hearing. A hearing was held before the Administrative Law Judge ("ALJ") on July 6, 2017. (R. 51–109). The ALJ rendered an unfavorable decision on August 21, 2017. (R. 13–39). The Appeals Council denied Plaintiff's request for review. (R. 1–6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court concludes that the Commissioner's decision is to be **AFFIRMED**.

## I. NATURE OF THE CASE

Schryvers seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*.*" *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. §

3

423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

>  (1) Is the person presently unemployed?
>
>  (2) Is the person's impairment(s) severe?
>
>  (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
>  (4) Is the person unable to perform his or her former occupation?
>
>  (5) Is the person unable to perform any other work within the economy?
>
>  An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience

to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff, who was thirty-five years old with at least a high school education when the ALJ rendered his decision (R. 38), alleged that he could not work due to post-traumatic stress disorder ("PTSD"), history of traumatic brain injury, severe anxiety with insomnia, degenerative joint disease in his knees, headaches, and tinnitus. (R. 58). The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (R. 14–39). The ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. (R. 15). The ALJ also found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 1, 2010. (R. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: traumatic brain injury, chronic PTSD, post-concussion syndrome, chronic obstructive pulmonary disease, hypertension, headaches, and left ear hearing loss and tinnitus. (R. 15). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (R. 16–21).

Next, the ALJ found Plaintiff retained the RFC to perform a reduced range of sedentary work. (R. 21–22). The ALJ found Plaintiff could:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except lift/carry 10 pounds; stand for 1 hour without interruption, walk 20 minutes without interruption, and sit for 2 hours without interruption. He must be allowed to sit/stand every 60 minutes as needed. Claimant can never push/pull pedals/controls with the lower extremities. He can occasionally stoop, balance, kneel, crouch, and crawl; however, he can never climb ladders, ropes, or scaffolds. Claimant must avoid concentrated exposure to cold, heat, wetness, humidity, and pulmonary irritants such as gases. He must avoid all exposure to irritants such as gasses. He must avoid all exposure to unprotected heights, dangerous machinery, and uneven surfaces. Claimant would be expected to have no more than 1 to 2 absences per month from work. Claimant can perform work that requires no more than simple, short instructions and simple work related decisions, with few workplace changes (unskilled work), with only simple work-related decisions (low stress). Claimant can perform work that requires occasional interaction with the general public, supervisors, and coworkers.

(R. 21–22).

The ALJ found Plaintiff could not perform his past relevant work as a combat engineer, a basic infantry member, construction worker, and a combination welder. (R. 37). However, relying on VE testimony (R. 97–102), the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform work that existed in significant numbers in the national economy. (R. 38–39). Specifically, the ALJ found Plaintiff could perform work as a surveillance systems monitor, addressing clerk, and a bench hand. (R. 38). Therefore, the ALJ found Plaintiff was not under a "disability" as defined in the Social Security Act from June 1, 2010, his alleged onset date, through August 21, 2017, his date last insured. (R. 39).

## V. ISSUE

Whether substantial evidence supports the Commissioner's decision that Plaintiff could perform work that existed in significant numbers in the national economy, and therefore was not disabled?

## VI. ANALYSIS

Plaintiff raises a single issue for this Court's consideration. That is — whether the ALJ's step five finding about the availability of jobs is supported by the testimony of the VE. Specifically, Plaintiff argues that the RFC, as determined by the ALJ, is not consistent with any of the hypothetical RFC assessments proposed by the ALJ to the VE. Thus, he argues that the VE's testimony fails to provide evidence that jobs are available under the RFC. On the other hand, Defendant argues that any error committed by the ALJ in omitting from the hypotheticals the RFC limitations identified by Plaintiff is harmless because the hypothetical limitations are either more restrictive than the RFC or not required by the jobs identified by the ALJ. *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983).

At the hearing the ALJ posed the following hypothetical to the VE.

> [A]ssume an individual of the claimant's age, education, and past work experience who does have a light exertional limitation; this individual could occasionally push and pull with the lower extremities both left and right; sit/stand option every 60 minutes if needed; occasionally stoop and balance, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; avoid concentrated exposure to extreme cold, heat, wetness, and humidity; avoid concentrated exposure to pulmonary irritants such as gas; avoid all exposure to hazardous conditions such as unprotected heights, dangerous machinery, and uneven surfaces; one to two unplanned absences in a month – no more than one to two; restricted unskilled work in a low-stress environment meaning no more than simple, short instructions and simple work-related decisions with few workplace changers; occasional interaction with the

> general public, supervisors, and coworkers; no further restrictions in this hypothetical.

(R. 99–100). In response to this hypothetical, the VE provided three examples of jobs that exist in the national economy which this individual could perform including a garment sorter, folder, and hand finisher. (R. 101). Next, the ALJ asked the VE to take this same hypothetical and reduce it to sedentary. *Id.* In response, the VE provided three examples of jobs that exist in the national economy which this individual could perform including a surveillance system monitor, an addressing clerk, and a bench hand. (R. 102). Based upon this evidence, the ALJ concluded that Plaintiff was not disabled. (R. 38).

Plaintiff argues because the sedentary hypothetical does not include several of the limitations as stated in the ALJ's RFC, that the ALJ's decision lacks the support of substantial evidence. The Court disagrees, and will address each of Plaintiff's specific arguments in turn. First, Plaintiff argues that the hypothetical lacks the limitation of a person who can "stand for 1 hour without interruption, walk for twenty minutes without interruption, and sit for two hours without interruption." (R. 22, 99–100). However, a restriction to sedentary work with a sit/stand option every 60 minutes, as set forth in the hypothetical, is more restrictive alone than when combined with the RFC limitation to "stand for 1 hour without interruption, walk for twenty minutes without interruption, and sit for two hours without interruption." (R. 22, 99–100).

Indeed, the regulations explain that "a sedentary job involves sitting most of the time" with an "occasional" amount of walking and standing "necessary to carry out job duties" which may include "carrying articles like docket files, ledgers, and small tools."

*Mazuji v. Comm'r of Soc. Sec.* 577 F. App'x. 959, 962 (11th Cir. 2014) (citing 20 C.F.R §404.1567(a)). Thus, jobs that require someone to stand for 1 hour without interruption or walk 20 minutes without interruption would not be characterized as sedentary work. Further, a limitation to no more than 1 hour of standing at a time is accounted for by the sit/stand option every 60 minutes. Finally, the ability to sit for 2 hours without interruption is less restrictive than the hypothetical which allows Plaintiff to change positions every 60 minutes. Therefore, the Court concludes that a person, who can perform the jobs identified by the VE when the more restrictive limitations set forth in the hypothetical are considered, can also perform those same jobs with the RFC limitations as stated by the ALJ. (R. 22, 99–100).

Plaintiff also argues that the hypothetical fails to include the limitations to "avoid all irritants such as gases" and to "avoid concentration to extreme cold, heat, wetness, and humidity" and to "never push/pull pedals/controls with the lower extremities." However, even though the hypothetical includes the term "occasional" with respect to the use of lower extremities, the ALJ clearly explained to the VE the hypothetical's conversion to sedentary and the VE affirmed his understanding. (R. 101–02). Indeed, an individual limited to sedentary work is implicitly precluded from using hand and foot controls because such work is classified as light work. *See* 20 C.F.R § 404.1567(b) ("a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.") Furthermore, all the jobs identified by the ALJ are sedentary, and do not require pushing or pulling with the lower extremities, and are not performed in abnormally cold work environments. *See U.S. Dep't*

10

*of Labor, Dictionary of Occupational Titles* ("DOT") (4th ed. 1991) § 379.367-010 (surveillance system monitor), 1991 WL 673244 (classified as sedentary work, duties specifically described as "[m]onitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action" and does not include exposure to toxic caustic chemicals or extreme heat, cold, wetness or humidity); § 209.587-010 (addressing clerk), 1991 WL 671797 (classified as sedentary work, duties specifically described as "[a]ddresses by hand or typewriter, envelopes, cards advertising literature, packages, and similar items for mailing. May sort mail" and does not include exposure to toxic caustic chemicals or extreme heat, cold, wetness or humidity); § 700.687-062 (bench hand), 1991WL 678937 (classified as sedentary work, duties specifically described as "[p]erforms any combination of following tasks in preparing cast jewelry findings for further processing: Cut, saws, or breaks off gates from jewelry castings, using shears, jeweler's saw, pliers, or foot press equipped with cutting tool.")[1]

Finally, Plaintiff argues that the case of *Dial v. Comm'r of Soc. Sec.,* 403 Fed. App'x. 420, 421 (11th Cir. 2010) requires remand. In *Dial,* the Eleventh Circuit reversed the lower court holding that it was not harmless error for the ALJ to fail to include all of Dial's employment limitations in the hypothetical questions posed to the VE where the

---

1 The Court recognizes that the DOT specifically includes the use of a "foot press equipped with cutting tool" in describing the work performed in the job of bench hand. Since this work is sedentary, the Court understands there to be an exertional difference between using a "foot press" and the pushing or pulling of hand and foot "controls" as included in the DOT description of light work. Moreover, the bench hand definition includes "or" which clearly indicates that the "foot press" maybe used as an alternative to other equipment to perform this job.

11

ALJ relied exclusively on the testimony of the VE and did not consider the descriptions of jobs in the DOT. In the instant action, the VE testified that with the exception of his testimony concerning the sit/stand option, which was based on his education, training and experience, his testimony is consistent with the DOT. (R. 38, 104). Because the ALJ considered both the VE testimony and the DOT, the instant action is distinguishable from *Dial.* Indeed, the DOT descriptions included in this opinion confirm that any error by the ALJ was harmless. *See Jackson v. Colvin,* 2014 WL 896628 *10 n.12 (N.D. Ala. March 6, 2014) (Distinguishing *Dial* and holding that it was appropriate to consider the DOT where the VE testified that his testimony was consistent with the DOT, and the ALJ concluded it was.)

This conclusion is undergirded by the finding in this opinion that the omission of several RFC limitations by the ALJ resulted in a hypothetical that was more restrictive than the RFC itself. Therefore, the Court concludes under the facts of this case that the ALJ's omission of Plaintiff's RFC limitations from the hypotheticals proposed to the VE is harmless error. *Diorio,* 721 F.2d at 728. Accordingly, the Court concludes that substantial evidence supports the ALJ's findings and conclusion that Plaintiff could perform work which existed in significant numbers in the national economy. (R. 13–39).

## VII. CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 29th day of March, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE